for our final case of the day, 24-7010, Maldin v. Wormuth. Ms. Hurst? Yes. Thank you, Your Honors. May it please the Court. My name is Amber Hurst. I represent Loretta Maldin, the appellant in this case. Since 1991, Ms. Maldin was employed at the Army, McAllister Army Ammunition Plant. Since 2003, she held a position of Explosives Operator Supervisor, Grade 6. It is the 2008 decision by her supervisor, Tommy Buckner, not to promote her to the position of Grade 9 that is at issue in this case. Ms. Maldin claims that the decision was based on her gender and or age and in retaliation for participating in a co-worker's age discrimination complaint for the EEO office at MCAT. The decision to the District Court granted summary judgment on all claims. The errors apply to both of the claims, so if I may, I'll go through the errors in order. Probably the most obvious error is the Court's mis-summarizing the testimony given in Ms. Maldin's case to facially show a lack of discriminatory intent. For instance, the Court noted in its order at Appendix 437, the Court said, quote, Planted further claims to have witness Buckner tell Cloud that it's time for you to go home because we need new blood in here, a statement that doesn't facially say anything about age. But the testimony that Ms. Maldin cited, the full statement was that Mr. Buckner said to Mr. Cloud, who is older and had the EEO age discrimination complaint, look here, you're an old man. It's time for you to go home. You're old. We need new blood in here. That statement facially shows Buckner's age discrimination and reason for telling Mr. Cloud to go home. The District Court omitted the references to age and then held that that statement was not overtly discriminatory. Sorry, Counsel, I'm just maybe confused, but how does Mr. Buckner's statements towards Mr. Cloud travel towards your client? Well, several reasons. One, they were both in the explosive operator position. Mr. Cloud was performing the job duties of the explosive operator supervisor grade nine that Ms. Maldin applied for and was denied. Those comments were made contemporaneously with the time period that Mr. Cloud made the age claim and Ms. Maldin participated by writing a statement saying, I've heard Mr. Buckner make these ageist comments. Same decision maker, same position that Ms. Maldin was applying for and was denied. Yeah, but sure, but couldn't Mr. Buckner be an ageist and discriminate against Mr. Cloud but not against Ms. Maldin? Absolutely, but that's a jury question. The statement was made with respect to a position that the older employee was acting in at the time that once that position became vacated by that older employee retiring and Ms. Maldin applied for and that she was denied in favor of a younger employee. So yes, absolutely, but that's a jury issue. The question respectfully here is whether or not that can be circumstantial evidence in Ms. Maldin's case. And the answer under the Tenth Circuit precedent is that yes, it can. It is a facially discriminatory statement indicating an age bias, why an older employee needs to get out of a position that the plaintiff in this case then applies for and is denied in favor of a younger employee. So it can go to circumstantial evidence of discrimination. In this circuit, it does not have the age discrimination or any comment of bias doesn't need to go toward the plaintiff at issue. It can be considered strong circumstantial evidence of motive and intent of a decision maker so long as it, for instance, goes toward the general policy, even an unwritten policy of hiring. And in this case, there is significant evidence that Mr. Buckner had and made discriminatory comments about calling older employees not spring chickens. They need to make way for the younger employees. You can't teach an old dog new tricks. As another example of what the court did, at Appendix 438, for instance, the court said while Buckner denies making the above remarks, he admittedly told MCAT personnel the Army should take younger employees under consideration when selecting candidates for high-level permanent positions and then credited the defendant's statement that, oh, he really didn't mean age discrimination. He didn't mean by targeting the younger, by saying to promote younger employees, you have to exclude the old employees. The court said that in his fifth note. But what Buckner actually testified to is, I said, and this is Buckner's quote, I said we need to take into consideration that these younger folks will eventually be future leaders. Those are the ones that need to be promoted. The court omitted that testimony, even though it was very clear in the record on the plaintiff's summary judgment response. Now, one of the... Counsel, can I ask you another question about the record? What is the employment relationship between the three interview panel members and Buckner? They are all supervisors of the Army. Do they report to Buckner? They do not report to Buckner, but they are considered agents of the employer in terms of whether or not they're considered to be interested parties. But Buckner was the selection official for this position, so did he have the final say in who was hired? He did, and that's another issue that the district court aired, and the court said that Buckner, who admitted he was the final selecting official, who created the job, that the interviewers relied on to ask the questions, the district court said that simply by virtue of getting a panel, the defendant broke the causal chain and made an independent decision. What happened was Buckner created the questions to be asked during the interview. He instructed the three panelists, who were supervisors at the Army, to ask those questions verbatim without deviation. Buckner created the scoring criteria, which was developed at, in his deposition, he admitted that at least half of the score, if I may, Your Honor. Thank you. He was the Colorado heir. He created the scoring, which he admitted in deposition, at least half of the questions, although the questions were general, he gave specific scores and greater scores for different types of experience that was not required of the grade nine position, by the way, a position which Ms. Molden had significant experience in, because when the older employee left, she, or through the years, she was a substitute in that position, but specifically targeted the experience of the younger employee that was not required for that grade nine position. So if I'm understanding you correctly, you're rebutting the argument that Buckner was not the cause of her not getting the promotion because this panel of independent people decided it, and you're saying that's not a good argument because he created the questions and created the scoring. Is that right? Is there more to it than that? Well, I want to make sure I didn't misunderstand your question. My argument is that Buckner was the decision maker and influenced the decision significantly enough that his discriminatory bias affected the decision making process. And he ultimately was the decision maker, but in terms of how he affected the interview process, it was by the only things you mentioned, and maybe they're enough, but the only things you mentioned were that he created the questions and he created the scoring. Is that right? He created the questions and the scores and admitted in depositions that at least half of the criteria was geared and did not apply to the position advertised, but to the experience of the younger employee. There's also evidence that... Go ahead. Don't finish, or... There's also evidence that the district court ignored and did not put in the order that Mr. Buckner said, well, I created it based on the vacancy announcement. The criteria, the specifics I used on the grading score, those are requirements for the position as shown in the vacancy announcement. Presented him during his deposition with the vacancy announcement, did not support his testimony. Then he said, well, I changed, I updated the vacancy announcement to include this. Defendants didn't produce a vacancy announcement that supported his position in the discovery period. So then he later said, well, it wasn't the vacancy announcement, it was the actual job description. Isn't in the job description. I apologize. No, no, you didn't do anything wrong, but I'm going to interrupt you at this point. Please. Because I think I'm familiar with that part of your argument. What is not clear to me is how the things he did affected her performance at the interview. Because it sounded like it was more like her general personality. She didn't seem interested in the job, things like that, rather than answers to specific questions. And so can you connect his questions and his scoring to how the interviewers rated the applicant? Absolutely. And one of the errors the court made is crediting the first time there was ever an articulated reason for why she didn't score as high was in the panelist's declarations given in response to her EEO complaint of age and gender discrimination. There's no contemporaneous record supporting their testimony. But they didn't just say it was a personality issue. They said that she didn't answer the questions as thoroughly. Well, if the questions are targeting experience that is not required for the grade 9 position that she has subbed for multiple times throughout the year, but instead targets a position held by the younger employee, of course her questions aren't going to be as thorough. And in the reply brief, I gave an example what the court generally said is, oh, well, you know, he's asking questions about technology. It's not that. For instance, there's a difference between being familiar with Excel spreadsheets and ChatGP, GPT, GP3, you can tell which one I'm more experienced with. But there's a difference. Simply to ask a question about technology is one thing. But in this case, Buckner's rating system, his scoring criteria was very specific. And he admitted in his depositions that those scoring, at least half of his scoring criteria targeted and gave higher points for answers that discussed experience that was not required of the grade 9 position, but was held and had by the younger male employee. Was there evidence along that line that older employees did more poorly on the evaluation? She came in last. I know that. There's not statistical evidence. We don't know why. We don't have any data on the other two employees. Well, doesn't that undermine what you're saying? It doesn't. Because we don't know what the answers were. Because we don't know if the answers by the younger employee targeted, if he, well, presumably he got more points because he had the experience and mentioned his experience for the particular criteria that were given higher points, which Mr. Buckner admitted was not necessary or required for the other position. It doesn't. Because the issue isn't whether she would have come in first. The issue is whether his discriminatory animus caused the end result of her getting less. What the district court has done and what the defendants advocate for is a per se rule that anytime you have a panel, no matter how much you influence that decision, you create the questions, you create the scoring, you infect your bias. Just by having the panel, you've broken the chain of causation. That's never been the rule. It's contrary to Staub. Did you develop this argument in your brief about the specific scoring matrix with examples from the scoring matrix how Mr. Buckner had influenced the outcome to favor younger applicants? Yes, it's well developed both in the brief and on the reply brief and in the summary judgment record. And we pointed out the different criteria where it's just not, it doesn't matter on the position. The court discounted all of that by finding, well, the panelists independently scored the applicants. The panelists never even testified they independently scored the applicants. The panelists said they relied solely to ask the questions and the grading criteria that Mr. Buckner did. The court said that must have been an independent scoring of the applicants. And Your Honor, I apparently waived my rebuttal time, so thank you, unless the court has questions. Thank you, counsel. Mr. Lewin. Thank you. I'm Randy Lewin. I'm the representative for the United States Army, the appellee and the employer in this case. So you just heard a lot about Tommy Buckner. It seems like that's where we ought to start. I'm not going to try to justify whatever comments he made. The court called them indirect and isolated. The important thing is the trial court didn't justify those comments either. The trial court did look to your point and said, well, they weren't directed toward her, which is a factor you all take in consideration. They were isolated. But the court did say, okay, those comments are probative of something I have to look at. And that's what the court did to try to resolve this case. In effect, you've talked earlier in your other civil case about DeNovo. So if you can look at this case fresh, DeNovo, and put yourself in the shoes of the trial court in this case, what you've got is you had a plaintiff, the appellant, who said, your honor, I'm going to read you four questions that employees who want a promotion were each asked. They were all asked the same questions, all the same. And you tell me if you think these questions show any prejudice against older people or women. One. I'm going to concede that. On its face, they don't. The question is whether in light of Mr. Buckner's knowledge of the applicants and particularly the plaintiff, those questions prejudiced the old lady. The question would be, how would they have prejudiced her? Are you going to find that because she's older, she doesn't know, she has to call her daughter like I do to find out how to use my phone? There's nothing in the record about that at all. Well, what counsel was saying is that there are elements in her experience that she didn't have and didn't need to perform her job. But that younger applicants, particularly the younger applicants in this case, would have had that experience and Mr. Buckner would have known that. I'm trying to piece together how I understand her and I hope I've been reasonably accurate. But that would be a way to discriminate against the older applicant without saying anything specifically about age, but just, oh, this younger applicant, he's a good tennis player. So the way it's, what are your physical activities? What do you do? Which is not relevant to the job, but Buckner knows that this would hurt the plaintiff. There's nothing in the record that indicates the scoring matrix or anything prejudiced anybody on this. They were independent and if you want to get into that, I talk about technology. I'm a little off your question, so I'll try to answer. But if you want to get into the technology, when they asked her about that, she said, well, I rarely check my emails. If you have somebody who rarely checks your emails, you're probably not going to get the And you've alluded to what else might have been here where the questions are asked. Some of the questions are kind of general, but those questions got answers like, well, when she didn't, you know, she didn't seem to care about the job, which is a very important factor. And that statement and the fact that she said, I don't check my emails, those are in the, they're not in a contemporaneous record. They are. That statement is on 117 in the appendix. And that was something written down at the interview stage. That was what one of the panelists said she said, and it was never disputed. There's never anything in the record that says she didn't say it. But the panelists said that. When did the panelists say that? When the panelists were asked to fill, I think there were affidavits when they filled out. Okay. This was months after the interview. This was after, correct. Okay. To try to get to your point directly, could you ask a question about tennis? Does the court want to be in the business of trying to police every question that's asked of everyone? When an employer might say, well, I might want to know about tennis because I want to know, for example, if this person plays doubles, plays with, well, with others, you know, is going to be a team player. Not that that's necessarily relevant, but do you want to be in the business of going, we're going to look at every time you ask a question that may go a little bit beyond what actually is part of the job. Because I don't think the courts want to do that. And I don't think the courts really say that. It's a terrible precedent. And you're taking away business's right to make these decisions on what they think is right. That's good as a general rule. But if that question is asked because the person creating the questions knows that they'll get a more favorable answer from this young person than from this older person, I think that would be an appropriate thing to look at. You'd have to tie it to age or gender, which wouldn't necessarily happen. You mean like older people wouldn't play tennis? No, no, I don't think the questions have to be tied to age or gender. If this person is prejudiced against older people and women and manages to accomplish that by asking questions that aren't tied to age or gender, but the person knows would harm this particular older woman, then why is that not discrimination? The premise of your question is this person is prejudiced against a woman. Right. There's nothing in the record that indicates that. The comments that were made... You don't think that his statement about that could be interpreted by a jury as being prejudicial? Showing bias? The statements that were made do not rise to the level that the court has said consistently are enough. There are lots of cases where people say things that aren't appropriate. There are cases where people yell and scream at employees and the courts have said, you haven't met the standard to get above the summary judgment standard to do it. Not justifying those statements, but that's a really big if that the plaintiff wants to put in here. He must have somehow been the... What's the phrase I'm looking for? He somehow knew what these people were going to do, so he was going to be their controller and decide what happened. When in fact, they all said, we did this independently. Two of them were over 40. Two of them were women. There's a lot of evidence that we've discussed where they said she didn't get the job because of her answers. Because of her answers, she was not as prepared. She didn't seem to fully want the job, which again, I think is a very important factor, especially when someone admits she doesn't check emails. That's really going to give you a problem no matter what gender or how old you are. Counselor, can I ask you about the sham declaration claim made by the plaintiff here? Do you think there was really a concrete sort of difference between the 2018 and the, I think, 2021 statement? If so, what was it? How did she change that was so significant material that then the court goes into the analysis as to whether or not it's a sham? The longer answer is that there is a difference because she said he didn't talk to me and then she said he did. But the short answer really is it's kind of a red herring because it doesn't matter whenever the statement was made. The key date in the case is June 11th, 2018, where she got, and I think she said 2008. It's 2018 where she got news that she wasn't getting the job. There wasn't anything before that in the last 100 days or farther than that that indicated that he knew of anything. And the court, that's the temporal proximity, which is kind of a fancy phrase that the court uses that says if you want to try to show that, if you want to try to make that claim, you're going to have to show that something happened reasonably. Now, she has made kind of a variation of the argument that, you know, revenge is a dish best served cold. But that is not something the court follows. There's no direct evidence that Buckner said to Ms. Malden, well, you spoke in favor of another employee at some point, so I'm going to make sure you don't get the job. So the trial court acknowledged you can infer something like that. But in this case, there was way too much time. And her point about maybe it wasn't in the advertisement, I think the point about that is nothing in anything in the record you have indicates in the least that there was any question or part of the job that dealt with the question of gender or the question of age. I think we've already talked about her point that the Army asked questions that weren't relevant to the job. It is important to remember that in deciding these cases, the plaintiff typically has to show she was substantially more qualified than the person picked. And the standard is requiring her to show an overwhelming disparity in qualifications, which she doesn't have. I hope that you will consider that. The very first oral argument you did today, you asked the very first person, what is a case that, what is the major case? And as I recall, he kind of flubbed it because that was a question that I hadn't really thought of either. But I would ask you to look at the Santana case, which is at the end of our brief, which is kind of like our case. There were questions that were asked, there were answers given, and one employee clearly didn't do a good job and didn't get the job because of that. And I think that reflects the court's general rule. Yes, of course you're concerned about people being treated fairly, but you're also concerned about what you have to do to get past the summary judgment standard. So we're asking you to refer. Thank you, counsel. Thank you. You didn't, you used up all your time. If you want to make a correction, an explanation, very briefly. No? I have no correction. Okay, thank you. Great. Case is submitted. Counselor excused. Court will be in recess until 9 a.m. tomorrow morning.